IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER EDWARDS, JR.                                          PLAINTIFF

                  v.                    Civil No. 5:25-CV-05056-TLB

CORRECTIONAL OFFICER TRENTON MARTIN,
Washington County Detention Center (WCDC);
CORRECTIONAL OFFICER TRINTON EVANS, WCDC;
CORPORAL TOM MULVANEY, WCDC;
SERGEANT ALEXIS BARTHOLOMEW; and JAY CANTRELL             DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Christopher Edwards, Jr., an inmate at the Washington County Detention Center ("WCDC"), has initiated the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. *See* (ECF No. 1).   Plaintiff proceeds *pro se* and *in forma pauperis* ("IFP").   (ECF No. 4).   This case was directly assigned to the undersigned Magistrate Judge pursuant to General Order 2024-02.   But all parties to the action have not yet consented to the jurisdiction of the undersigned.   *See* 28 U.S.C. § 636(c).   Accordingly, for the purpose of preservice review pursuant to 28 U.S.C. § 1915A(a), the case will automatically be reassigned to United States District Judge Timothy L. Brooks and referred to the undersigned for a report and recommendation pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3).   Upon that review, the undersigned recommends this matter be dismissed without prejudice for failure to state a plausible claim for relief.   *See* 28 U.S.C. § 1915A(b)(1).

## BACKGROUND

When Plaintiff initiated this action, he requested to proceed *in forma pauperis* ("IFP"). (ECF No. 2). Granting the motion, the Court ordered Plaintiff to submit an amended complaint

1

after noting potential factual and legal deficiencies with his claims. (ECF No. 4). Plaintiff subsequently filed an Amended Complaint which asserts three grounds for relief. (ECF No. 7).

The first claim alleges Defendant Trenton Martin verbally threatened Plaintiff. Specifically, Plaintiff says that when he did not receive a towel change as requested, he threw his towel and then walked out. In response, Plaintiff says Defendant Martin threatened to charge him with "escaping" and cursed at him, but did not pick up the towel. On another occasion, Plaintiff says that Defendant Martin told him that using Styrofoam cups was considered contraband, and he says Defendant Martin threatened to place a $5 limit on his commissary. According to Plaintiff, the day after Martin made this threat, Plaintiff could not access his commissary or the phones when Defendant Martin was working. Plaintiff says that Defendant Martin also told him to take down the food menu and to clean the walls even though police officers are not removing the KKK signs and confederate flags from along the highway. Plaintiff says Defendant Trinton Evans was aware of these threats but did not intervene. Plaintiff names Defendants Martin and Evans in their individual and official capacities.

Second, Plaintiff asserts that Defendant Tom Mulvaney failed to timely respond to the inquires he submitted on the WCDC kiosk system, including questions about the names of WCDC employees who were assigned to his housing unit when inmates in his housing unit had been diagnosed with COVID-19, failed to timely coordinate a notary to assist him with four forms, and denied him "rights to the law library." Plaintiff says he was not physically injured but feels discriminated against and that officials are prejudiced against him. Plaintiff identifies Defendant Mulvaney in his official and individual capacities.

Third, Plaintiff says that Defendant Sgt. Alexis Bartholomew spoke to him about the

2

above-described complaints regarding Defendants Martin and Evans.   Plaintiff says Defendant Bartholomew told him that she was not racist, and that Defendants Martin and Evans were also not racist.   Plaintiff identifies Defendant Bartholomew in her official and individual capacities.

## LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires the Court to review cases brought by prisoners prior to service of process being issued.   *See* 28 U.S.C. § 1915A(a).   The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seek monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact."   *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A pro se complaint, moreover, is to be given liberal construction, meaning "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."   *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).   However, "they still must allege sufficient facts to support the claims advanced." *Id.* at 914 (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## DISCUSSION

While Plaintiff does not explicitly assert a cause of action, he claims that he has been discriminated against and he challenges the conditions of his confinement.   *See* (ECF No. 7).

Accordingly, this Court considers whether he has established a plausible claim for relief under 42 U.S.C. § 1983. To state a § 1983 claim, "a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law." *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006).

## A.    Claim One

Plaintiff claims Defendant Martin threatened him, and that Defendant Evans did nothing to intervene. Plaintiff also asserts that Defendant Martin "is a racist." *See* (ECF No. 7). Plaintiff's allegations fail to assert a plausible constitutional violation.

Regarding Plaintiff's claims against Defendant Martin, it is well established that "[v]erbal threats and name calling usually are not actionable under § 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338, 1339 (8th Cir. 1985)). The exception is when an official has engaged in a "brutal and wanton act of cruelty even though no physical harm was suffered." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (cleaned up). In such situations, courts have held that "a prisoner retains at least the right to be free from the terror of instant and unexpected death at the whim of his . . . custodians." *Id.* (quoting *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986)).

Here, Plaintiff does not allege that Defendant Martin threatened to kill him or even that he threatened to physically harm him. Rather, Plaintiff claims that Defendant Martin threatened to charge him with a disciplinary violation and restrict his access to phones and commissary. Notably, Plaintiff does not allege that Defendant Martin issued a disciplinary violation against him or

4

restricted his access to commissary.[1]    *See* (ECF No. 7).    These threats, therefore, do not rise to the level of a constitutional violation.    *See Irving*, 519 F.3d at 448-49.

Plaintiff also claims Defendant Martin "is a racist." Recognizing that pro se pleadings are to be liberally construed, this Court generously views Plaintiff's allegations as a claim that Defendant Martin treated him differently based on his race.    The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."    *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)) (internal quotation omitted).    To this end, "the first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]."    *Klinger v. Dept. of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994).

Plaintiff's allegations fail at the first step – Plaintiff has failed to assert *any* facts establishing that he was treated differently from similarly situated inmates.    Plaintiff fails to describe what, specifically, the defendants did (or failed to do) that led him to label them as "racist."    Such conclusory allegations are not entitled to the presumption of truth.    *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (courts are "not bound to accept as true a legal conclusion couched as a factual allegation") (citing *Twombly*, 550 U.S. at 555).    Accordingly, Plaintiff has failed to establish a plausible equal protection claim.    *Klinger*, 31 F.3d at 731 ("Absent a threshold

---

[1] While Plaintiff says that the day after Defendant Martin made this threat, he could not access his commissary, he does not claim that he was the *only* one who could not access his commissary or that Defendant Martin *caused him* to lose access to his commissary for one day.    Inmates, moreover, have no constitutional right to commissary privileges.    *See Blake v. Moore*, Civil No. 4:16-cv-4078, 2018 WL 3745826, at *8 (W.D. Ark. Aug. 7, 2018) (listing cases).

showing that [plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim.").

This leaves Plaintiff's claim against Defendant Evans for his failure to intervene when Defendant Martin purportedly threatened him.  *See* (ECF No. 7).  For the reasons described above, Plaintiff has failed to establish that Defendant Martin's threats rise to the level of a *constitutional* violation.  "Without an underlying constitutional violation, there can be no liability for failure to intervene."  *Peterson v. Heinen*, 89 F.4th 628, 640 (8th Cir. 2023).  Because Plaintiff has failed to establish a plausible claim that Defendant Martin violated his constitutional rights, he similarly has failed to establish a plausible claim that Defendant Evans violated his constitutional rights when failing to intervene to stop Defendant Martin's conduct.  Plaintiff has failed to establish a plausible cause of action against either Defendant Martin or Defendant Evans.

**B.   Claim Two**

Plaintiff alleges in claim two that Defendant Mulvaney did not timely respond to Plaintiff's requests for information submitted on the WCDC kiosk system.

The fundamental problem with this claim is that Plaintiff lacks a constitutionally protected right in the WCDC's grievance procedure.  *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (no constitutional violation by prison's failure, if any, to process plaintiff's grievances). Further, to the extent that Defendant Mulvaney violated WCDC policy in failing to timely respond to his kiosk grievances or requests, a violation of policy, by itself, is not sufficient to establish a constitutional violation.  *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for a violation of prison policy).

Plaintiff also alleges Defendant Mulvaney denied him "rights to the law library" and

6

delayed coordinating a notary to sign his forms.  The Court construes these allegations as an "access to the courts" claim.  It is well-established that "inmates have a constitutional right of access to the courts that requires the provision of some means 'for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Bear v. Fayram*, 650 F.3d 1120, 1122-23 (8th Cir. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). "There is no one method of satisfying this constitutional requirement, and a 'prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices.'" *Id.* at 1123 (quoting *Bear v. Kautzky*, 305 F.3d 802, 806 (8th Cir. 2002)).   To prove an "access to the courts" violation, an inmate must show "actual injury by demonstrating that the alleged shortcomings in prison resources hindered his efforts to pursue a legal claim."  *Id.* (quoting *Lewis*, 518 U.S. at 351) (internal quotations omitted).

Plaintiff's claim fails because he has failed to assert any injury suffered because of Defendant Mulvaney's failure to make the law library accessible to him or did not timely coordinate a notary to sign his forms.  Because an access to the courts claim requires a plaintiff to assert that he suffered some injury and because Plaintiff asserts no such injury, Plaintiff's claim two against Defendant Mulvaney fails as a matter of law.

## C.    Claim Three

While Plaintiff identifies Sgt. Bartholomew as a defendant, it is entirely unclear what he asserts this defendant did (or failed to do) in violation of his constitutional rights.

Plaintiff claims Defendant Bartholomew came to talk to him about his grievances regarding Defendants Martin and Evans.  *See* (ECF No. 7).   To the extent that he endeavors to attach

7

liability to Defendant Bartholomew for her role as a supervisor, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (internal quotations omitted).   The fundamental problem here is that Plaintiff has failed to establish that Defendants Martin and Evans violated his constitutional rights.   Put differently, Plaintiff has not (and cannot) establish that Defendant Bartholomew's failure to train or supervise *caused* the constitutional violation because he has not established that there was any constitutional violation.

To the extent Plaintiff claims Defendant Bartholomew herself was involved in the alleged constitutional violations, he does not assert any facts describing such violations.   To the extent that he claims that she is a "racist" and prejudiced against him, as noted above, a Fourteenth Amendment equal protection claim requires a plaintiff to establish that the defendants treated similarly situated persons differently.   *See Klinger*, 31 F.3d at 731.   Plaintiff has not made that threshold showing here and his entirely conclusory allegation that Defendant Bartholomew (or any other defendant) is racist is simply insufficient.   Plaintiff's third claim should also be dismissed for failure to state a plausible claim for relief.

## D.    Jay Cantrell

Plaintiff identifies Jay Cantrell as a defendant in the case caption of the Amended Complaint, *see* (ECF No. 7) but asserts no facts in the body of the Amended Complaint itself establishing what Jay Cantrell purported did (or failed to do) in violation of Plaintiff's constitutional rights.   Accordingly, to the extent that he intended to identify Jay Cantrell as a

defendant in his individual capacity, such a claim should fail as a matter of law. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

### E.    Official Capacity Claims

One final matter requires some discussion: Plaintiff identifies the Defendants in their personal and official capacities. *See* (ECF No. 7). "A suit against a government official in his or her official capacity is another way of pleading an action against an entity of which an officer is an agent." *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)). Put differently, "the real party in interest in an official-capacity suit is the governmental entity and not the named official." *Baker*, 501 F.3d at 925 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Plaintiff's claims against the Defendants in their official capacities is the same as a claim against Washington County itself.

A municipality such as Washington County "may be held liable for a constitutional violation under section 1983 if the violation resulted from (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (quoting *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016)). While "there must be an unconstitutional act by a municipal employee before a municipality can be held liable, there need not be a finding that a municipal employee is liable in his or her individual capacity." *Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) (internal citation and quotations omitted) (cleaned up). Once again, Plaintiff has failed to assert a plausible constitutional violation by any Washington County employee. Accordingly, Plaintiff has failed to assert a plausible official capacity claim, and such claims should also

therefore be dismissed.

## CONCLUSION

In sum, having reviewed Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, this Court recommends that: (1) Plaintiff's Amended Complaint (ECF No. 7) be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim; and (2) Plaintiff is warned that, in the future, this dismissal may be counted as a strike for purposes of 28 U.S.C. § 1915(g) and thus, the Clerk is directed to place a § 1915(g) strike flag on the case for future judicial consideration

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**STATUS OF REFERRAL:** This case is no longer referred.

**DATED** this 21st day of April 2025.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE